## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD HAMILTON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. _____ |
| v. | ) ) |
| ATHENAHEALTH, INC., AMY ABERNETHY, BRANDON HULL, JEFFREY R. IMMELT, DEV ITTYCHERIA, JOHN A. KANE, JACQUELINE B. KOSECOFF, BRIAN P. MCKEON, ED PARK, THOMAS J. SZKUTAK, VERITAS CAPITAL FUND MANAGEMENT, L.L.C., EVERGREEN COAST CAPITAL CORP., MAY MERGER SUB INC., and MAY HOLDING CORP., | ) **CLASS ACTION COMPLAINT FOR** ) **VIOLATIONS OF SECTIONS 14(a) AND** ) **20(a) OF THE SECURITIES EXCHANGE** ) **ACT OF 1934** ) ) ) ) **JURY TRIAL DEMAND** ) |
| Defendants, | ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Richard Hamilton ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public stockholders of athenahealth, Inc. ("athenahealth" or the "Company") against athenahealth's Board of Directors (the "Board" or the "Individual Defendants") for their Violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17

C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Veritas Capital Fund Management, L.L.C. ("Veritas") and Evergreen Coast Capital ("Evergreen") through a company affiliated with both Veritas and Evergreen.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on December 4, 2018. The Proxy recommends that athenahealth shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby athenahealth is acquired by Veritas and Evergreen for $135.00 per share (the "Merger Consideration"). The deal is valued at approximately $5.68 billion and is expected to close in the first quarter of 2019.

3.      After a long period of sustained growth, athenahealth began to transition from a start-up to an established company. That transition has seen slower growth, disappointing analysts and investors. It was not until Elliott Associates, L.P. ("Elliott") obtained a stake in athenahealth that the Board considered a sale of the Company. The continued pressure from Elliott, both private and public, led to the resignation of the then-CEO and a sales process that ended with Elliott and Veritas taking the Company private for less than the Company is worth. While the financial analyses conducted by the Company's financial advisors calculated an implied equity value for the Company as high as $164 per share, Elliott and Veritas will be buying athenahealth for $135 per share.

4.      Furthermore, the Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by athenahealth management, as well as the

financial analyses conducted by Centerview Partners LLC ("Centerview") and Lazard Frères & Co. LLC ("Lazard"), athenahealth's financial advisors.

5.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to athenahealth's shareholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to athenahealth's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

6.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Athenahealth.

7.     Defendant athenahealth is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 311 Arsenal Street, Watertown, Massachusetts 02472. athenahealth common stock trades on NASDAQ under the ticker symbol "ATHN."

8.     Defendant Amy Abernethy has been a director of the Company since 2013.

9.     Defendant Brandon Hull has been a director of the Company since 1999.

10.    Defendant Jeffrey R. Immelt has been a director of the Company and Chairman of the Board since February 2018, and has been Executive Chairman since June 2018. Defendant Immelt served as Chairman and Chief Executive Officer of General Electric from 2001 to 2017. Prior to that role, Defendant Immelt served as president and chief executive officer of GE

Medical Systems from 1996 to 2000 and held other leadership positions in GE's plastics and appliances businesses.

11.     Defendant Dev Ittycheria has been a director of the Company since 2010.

12.     Defendant John A. Kane has been a director of the Company since 2007. From July 2017 to January 2018, Defendant Kane served as interim Chief Financial Officer for athenahealth. Defendant Kane served as vice president of GE Healthcare from January 2006 to December 2006.

13.     Defendant Jacqueline B. Kosecoff has been a director of the Company since 2012.

14.     Defendant Brian P. McKeon has been a director of the Company since 2017.

15.     Defendant Ed Park has been a director of the Company since 2017. Defendant Park served as athenahealth's Executive Vice President and Chief Operating Officer from 2010 to 2016 and served as Chief Technology Officer from 2007 to 2010. In its Schedule 14A Proxy Statement filed on April 26, 2018, the Company stated that Defendant Park is not independent within the meaning of NASDAQ and SEC rules.

16.     Defendant Thomas J. Szkutak has been a director of the Company since 2016. Defendant Szkutak served as the chief financial officer of GE Lighting from September 2001 to September 2002, finance director of GE Plastics Europe from 1999 to September 2001, and executive vice president of finance at GE Asset Management from 1997 to 1999.

17.     Defendants Abernethy, Hull, Immelt, Ittycheria, Kane, Kosecoff, McKeon, Park and Szkutak are collectively referred to herein as the "Board."

18.     Defendant Veritas is a private equity firm that focuses on technology products and services for government and commercial customers. Veritas is headquartered at 9 West 57th Street, 29th Floor, New York, New York 10019.

19.     Defendant Evergreen is a subsidiary of Elliott and is based in Menlo Park, California.

20.     Defendant May Holding Corp. is a Delaware corporation affiliated with Veritas and Evergreen.

21.     Defendant May Merger Sub Inc. is a Delaware corporation and is a wholly owned subsidiary of May Holding Corp.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

23.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) athenahealth maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of athenahealth common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

26.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of November 30, 2018, Athenahealth had approximately 40.6 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file a Definitive Proxy with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d) Plaintiff's claims are typical of those of the other members of the Class.

(e) Plaintiff has no interests that are adverse to the Class.

(f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h) Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. The Board Capitulates to Pressure From Activist Investor and Agrees to Fire Sale

27. Athenahealth offers hospitals software services focusing on medical records, revenue cycle, patient engagement, care coordination and population health. The software, called athenaNet, allows hospitals to handle the business side of medicine through one interface. Most of the Company's revenues are generated as a percentage of payments collected by the hospital via athenaNet. Over the past five years, revenues have almost doubled—from $563.2 million in 2013 to $1.1 billion in 2017.

28. Despite its impressive revenue growth, the past few years have been rocky for athenahealth. Years of substantial revenue growth gave way to less exceptional results, and the

Company's stock price ticked downwards. In May 2017, after the stock price hit its second-lowest closing price in the past five years, Elliott snatched up more than 9% of athenahealth's outstanding shares and deemed the Company "significantly undervalued" but still "an attractive investment opportunity."

29.     Over the next few months, Elliott, the Board and members of athenahealth's management discussed different strategic opportunities and initiatives that Elliott believed would maximize shareholder value. In August 2017, the Company announced that it was restructuring the executive management, with the roles of chairman and president to be separated from the CEO position. At the time, T. Rowe Price New Horizons Fund portfolio manager Henry Ellenbogen stated that as "[athenahealth] needs a management team and operating plan that can successfully tackle the next stage of growth" and the leadership restructuring would allow athenahealth to "become a "market leader and build a durable and sustainable company." Leerink, an investment bank, stated that it saw the restructuring "as largely beneficial for investors."

30.     The plaudits from the financial world did not sway Elliott. The move to separate the CEO, president and chairman roles was just the first step in its ultimate plan to purchase the Company. Elliott's form of activist investing involved taking companies private, implementing whatever changes Elliott sought, and then re-selling the company. In 2006, Elliott was the second-largest shareholder of Metrologic Instruments. Elliott partnered with Francisco Partners to purchase Metrologic Instruments for $440 million. Less than two years later, they sold the company to Honeywell for $720 million. A similar story involves Riverbed Technology; Elliott became a Riverbed Technology shareholder in 2013 and immediately began pressuring the company to sell itself. Elliott made several bids to purchase Riverbed Technology; the company

eventually agreed to sell itself to other private equity firms for $3.6 billion. Elliott has used similar tactics to force the sale of a company in its sightline, including BMC Software, Novell, Compuware, and Blue Coat Systems.

31.     Soon after Elliott announced its holdings in athenahealth, then-CEO Jonathan Bush met with Jesse Cohn, who leads Elliott's activist investing. In that meeting, according to a *New Yorker* article, dated August 27, 2018, Cohn gave Bush 34 pages of research and analysis on the Company and called for Bush to cut $100 million in costs and to "take a step back" from running the Company. Cohn later met with the Board and gave them a 45-page report on Bush, complete with complaints from current and former employees about Bush's behavior and photos of Bush partying and sailing. The point was to show the Board that Bush should not be running athenahealth. On August 1, 2017, ten weeks after Elliott purchased its holdings in athenahealth, the Board announced its plan to separate the roles of CEO, chairman and president. Two months later, after more discussions with Elliott, the Company announced that it planned to cut $100 to $115 million in costs, mainly through workforce reduction and office closures.

32.     In November 2017, Cohn invited Bush to a dinner. Cohn told Bush that the cost-cutting and restructuring were not a panacea; the Company needed to go private. And Elliott was interested. That month, Elliott sent a private letter to the Board, offering to purchase the Company for $150-$155 per share. Bush believed that it was an attempt by Elliott to purchase the Company for less than it was worth. The Board reviewed the offer and rejected it.

33.     Elliott was not deterred. On January 22, 2018, Elliott again offered to purchase the Company, stating in its private letter to the Board that it believed a sale of the Company was in the best interest of the shareholders. Again, the Board rejected Elliott's proffer.

34.     Over the next several months, Elliott remained silent. In February 2018,

Defendant Immelt joined the Board as Chairman. That same month, athenahealth announced positive financial results, as well as that KLAS, a healthcare analytics company, had ranked the Company No. 1 for the sixth consecutive year for its practice management solution. The Company announced positive financial results again in April 2018. That same month, Bush announced that he planned to deconstruct the single interface athenaNet into standalone micro-services.

35.     In May 2018, Elliott changed tactics. Elliott publicly offered to buy the Company for $160 per share, noting that the "private market is an ideal setting for athenahealth and its employees to focus on long-term strategic initiatives and pursue the Company's broader mission without the distraction of quarterly reporting." One week later, Elliott published another letter to the Board demanding action on its offer. Another large athenahealth shareholder, Janus Henderson Group plc, announced that it had pushed the Board to begin a formal sales process. Days later, Elliott published yet another letter to the Board concerning its offer. At the same time, articles began appearing describing lewd, violent behavior by Bush. On June 5, 2018, less than one month after Elliott made its first public overture, the Board agreed to begin a sales process. Bush resigned from the Company and the Board the next day.

36.     Elliott pressured the Board to sell the Company, but it did not plan on paying its full offer price. When Elliott made its public offer of $160 per share, a Deutsche Bank analyst believed Elliott could end up paying as much as $170 per share. In a Bloomberg Opinion piece dated June 6, 2018, Brooke Sutherland and Max Nisen stated that a price "materially" higher than $160 per share would be a "fair price, if not a full one." Yet Maralto Investments noted in June 2018 that a long sales process could lead to athenahealth shares falling back to $135 to $140 per share. That is just what happened. During the sales process, 65 different parties were

contacted concerning a potential transaction. Of those, only ten submitted preliminary indications of interest. Just six proposals were received in the second round, and only three final offers received at the end of the process Elliott itself dropped out of the process in September, a tactic, according to news reports, to lower the price it might pay. The tactic worked. By the end of October 2018, the Board had agreed to sell itself to Veritas and Elliott for $135 per share, a 15% discount to Elliott's original public offer of $160 per share.

37.     The Merger Consideration does not adequately compensate athenahealth shareholders for their investment. The analyses from the Company's financial advisors calculated implied per share equity values much higher than $135. For example, Centerview's *Selected Transactions Analysis* calculated an implied per share equity value as high as $152, and Centerview's *Discounted Cash Flow Analysis* calculated an implied per share equity value as high as $148. Lazard's *Selected Precedent Transactions Multiple Analysis* calculated an implied per share equity value as high as $164, and Lazard's *Discounted Cash Flow Analysis* calculated an implied per share equity value as high as $151.

38.     In the end, Elliott got what it wanted. athenahealth is going private, but Elliott is paying less than the Company is worth. If history is any indication, Elliott will sell athenahealth in a few years for a premium. Elliott will profit; the other athenahealth shareholders will not.

**B. Athenahealth's Officers Stand to Receive Benefits Unavailable to the Class**

39.     The Proxy acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

40.     Stock options, restricted stock units and performance stock units that have been awarded to and are held by athenahealth's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The

treatment of these equity awards, in addition to benefits provided to executive officers through the Company's Change in Control Severance Plan for Certain U.S. Officers and Executives, will create a windfall for athenahealth's executive officers that is unavailable to the common stockholders. As demonstrated in the following chart, the executive officers of athenahealth in total stand to receive up to $20.3 million, if they are let go without "cause" or voluntarily leave for "good reason" after the Proposed Transaction closes:

| Name | Cash | Equity | Perquisites/ Benefits | Other | Total |
|---|---|---|---|---|---|
| Jonathan Bush | $4,830,000 | — | | | $4,830,000 |
| | | | — | — | |
| Dan Haley | $712,500 | $1,940,895 | $11,871 | $10,000 | $2,675,266 |
| Marc A. Levine | $1,235,000 | $4,274,235 | $10,202 | $10,000 | $5,529,437 |
| Jonathan Porter | $847,500 | $2,208,735 | $11,871 | $10,000 | $3,078,106 |
| Prakash Khot | $890,000 | $3,345,435 | $11,871 | $10,000 | $4,257,306 |

41.     The members of the Board and the executive officers stand to gain handsomely whether or not they stay at the Company after the Proposed Transaction closes. In total, as demonstrated in the following chart, the executive officers and Board members will obtain more than $26 million:

| | Stock Options | RSU Awards | PSU Awards | Estimated Total Cash Consideration |
|---|---|---|---|---|
| **_Directors_** | | | | |
| Amy Abernethy | — | $260,685 | — | $260,685 |
| Brandon Hull | $922,486 | $260,685 | — | $1,183,171 |
| Jeffrey R. Immelt | — | $419,850 | — | $419,850 |
| Dev Ittycheria | — | $260,685 | — | $260,685 |
| John A. Kane | $537,944 | $260,685 | — | $798,629 |
| Jacqueline D. Kosecoff | — | $260,685 | — | $260,685 |
| Brian P. McKeon | — | $260,685 | — | $260,685 |
| Ed Park | — | $260,685 | $1,251,045 | $1,511,730 |
| Thomas J. Szkutak | — | $260,685 | — | $260,685 |
| **_Executive Officers_** | | | | |

| | | | |
|---|---|---|---|
| Bret Connor | — | $848,745 | $543,510 | $1,392,255 |
| Dan Haley | — | $970,515 | $1,362,420 | $2,332,935 |
| Prakash Khot | — | $2,462,805 | $1,522,800 | $3,985,605 |
| Marc A. Levine | — | $4,105,485 | $1,087,155 | $5,192,640 |
| Paul Merrild | — | $787,455 | $1,386,045 | $2,173,500 |
| Timothy O'Brien | — | $1,143,990 | $1,233,630 | $2,377,620 |
| Jon Porter | — | $1,281,555 | $1,146,960 | $2,428,515 |
| David C. Young | — | $918,540 | — | $918,540 |

## C.  The Preclusive Deal Protection Devices

42.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

43.     By way of example, section 6.2(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 6.2(a) further demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

44.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Veritas and Evergreen. For example, pursuant to section 6.2(c) of the Merger Agreement, the Company must notify Veritas and Evergreen of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, section 6.2(f)(i) requires that the Board grant Veritas and Evergreen three (3) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. Veritas and Evergreen is able to match the unsolicited offer because, pursuant to section 6.2(f)(i) of the Merger Agreement, the Company must provide Veritas and Evergreen with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

13

45.     In other words, the Merger Agreement gives Veritas and Evergreen access to any rival bidder's information and allows Veritas and Evergreen a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Athenahealth, because the Merger Agreement unfairly assures that any "auction" will favor Veritas and Evergreen and allow Veritas and Evergreen to piggy-back upon the due diligence of the foreclosed second bidder.

46.     In addition, pursuant to section 8.5(b) of the Merger Agreement, athenahealth must pay Veritas and Evergreen a termination fee of $142.1 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

47.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

**D.  The Materially Incomplete and Misleading Proxy**

48.     The Individual Defendants owe the stockholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to Athenahealth stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

49.     On December 4, 2018, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, inter alia, to provide the Company's stockholders with all material information

necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, athenahealth shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

50.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Centerview and Lazard's fairness opinions, Centerview reviewed "certain internal financial information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections . . . prepared by management of the Company . . . ." Similarly, Lazard reviewed "various financial forecasts and other data provided to [it] by the Company relating to the business of the Company prepared by management of the Company . . . ." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that athenahealth's management provided to the Board, as well as Centerview and Lazard.

51.     Notably, Defendants failed to disclose the financial projections available for fiscal years 2018 to 2023 for: (a) cost of revenue; (b) selling and marketing; (c) research and development; (d) general and administrative; (e) capital expenditures and capitalized software costs, as separate line items; and (f) cash impact of net working capital and other, as separate line items. This omitted information is necessary for athenahealth stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Centerview's Financial Analyses*

52.     With respect to the *Selected Companies Analysis,* the Proxy fails to disclose

whether Centerview performed any type of benchmarking analysis for athenahealth in relation to the selected public companies.

53. With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose whether Centerview performed any type of benchmarking analysis for athenahealth in relation to the target companies.

54. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the individual inputs and assumptions utilized by Centerview to derive the discount rate range of 10.5% to 12.0%. The Proxy also fails to disclose the amount of net cash, as set forth in the Internal Data. In addition, the Proxy fails to disclose the range of implied perpetuity growth rates resulting from the analysis.

### Materially Incomplete and Misleading Disclosures Concerning Lazard's Financial Analyses

55. With respect to the *Selected Companies Analysis,* the Proxy fails to disclose whether Lazard performed any type of benchmarking analysis for athenahealth in relation to the selected public companies.

56. With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose whether Lazard performed any type of benchmarking analysis for athenahealth in relation to the target companies.

57. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the individual inputs and assumptions utilized by Lazard to derive the discount rate range of 10.0% to 11.0%.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

58. The Proxy also fails to disclose material information concerning the sales process. For example, the Proxy fails to state whether the confidentiality agreements athenahealth entered

into with 64 parties (other than Veritas and Evergreen) are still in effect and/or contain DADW standstill provisions that are presently precluding each of those parties from making a topping bid for the Company. The disclosure of the terms of any standstill provisions is crucial to athenahealth stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. This information is especially important where, as here, the Proxy is silent as to whether any confidentiality agreements contained a standstill agreement and whether any standstill agreements have been waived.

59.     Lazard and Centerview presented a number of analyses to the Board that were not disclosed in the Proxy. Specifically, the Proxy fails to disclose: the materials regarding the Company's financial position and operations that Lazard reviewed with the Board on December 5, 2017; Lazard's and Centerview's preliminary financial analyses of Elliott's May 2018 offer as presented to the Board on May 31, 2018; Lazard's and Centerview's preliminary views and understandings of the potential investment theses of the parties advancing in the process, as presented to the Board on July 25, 2018; Lazard's and Centerview's preliminary financial analyses of the offers submitted at the end of September 2018, as well as their preliminary financial analyses of athenahealth as a standalone business, as presented to the Board on September 30, 2018; and Lazard's and Centerview's preliminary financial analyses as presented to the Board on October 24, 2018.

60.     The Proxy also fails to disclose the analyses presented to the Board on October 12, 2018 by McKinsey & Company concerning a potential strategic partnership between the Company and the Consortium.

61.     The Board and management discussed a number of financial models and the financial prospects of the Company. Yet the Proxy does not disclose this information.

Specifically, the Proxy fails to disclose: the Company's prospects as discussed at the Board meeting on December 5, 2017; the Company's prospects as discussed by the Board on February 2, 2018; the May 2018 model; the updated draft five-year management forecast presented to Centerview and Lazard on October 10, 2018; and the alternatives reflected by the October 2018 Model.

62.     The Proxy notes that some parties received the October 2018 Model projections. However, the Proxy does not disclose which parties received the October 2018 Model projections. Furthermore, the Proxy does not disclose whether any parties received the May 2018 Model projections and/or the Adjusted Management Model and, if so, which parties received those projections.

63.     The Company received preliminary indications of interest from 12 parties between July 11, 2018 and August 7, 2018. Later, between September 26, 2018 and September 28, 2018, the Company received written offers from five parties and the Consortium. And then, on October 22, 2018, the Company received offers from Party B, Party C and Veritas. The Proxy does not disclose information about the proposals and offers received, including the amounts of many of the offers and proposals, whether the parties were financial sponsors or strategic parties, and if there were any conditions attached to the proposals. Additionally, the Proxy does not disclose information about the nine parties that were invited to the second round of the sales process, given that the Company received 12 indications of interest in the first round. The Proxy also does not disclose information about the four parties that were invited to the final round of the process, given that the Company received offers from five parties and the Consortium. Finally, the Proxy does not disclose when Elliott and Veritas partnered up and whether the Board agreed to consider such a proposal before it was made on October 24, 2018.

64.     Finally, the Proxy fails to disclose information concerning conflicts of interest with Lazard and Centerview. For example, the Proxy does not disclose the basis for the provision in the agreement with Centerview that $7.5 million of Centerview's fee is payable on the earlier of July 18, 2019 or closing of the Proposed Transaction. The Proxy also does not disclose the amount of fees that Lazard received from the advisory services it provided to companies in which Elliott has an investment.

65.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, athenahealth stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

66.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

67.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

68.     Further, the Proxy indicates that on November 11, 2018, Centerview and Lazard reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board their oral opinions, which were confirmed by delivery of a written opinion of the same

date, to the effect that the Merger Consideration was fair, from a financial point of view, to athenahealth shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Centerview and Lazard's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

69.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     Defendants have filed the Proxy with the SEC with the intention of soliciting athenahealth shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

72.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of athenahealth, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

73.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

74.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of athenahealth shares and the financial analyses performed by Centerview and Lazard in support of its fairness opinion; and (iii) the sales process.

75.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Centerview and Lazard reviewed and discussed their financial analyses with the Board during various meetings including on November 11, 2018, and further states that the Board relied upon Centerview and Lazard's financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

76.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the

Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

77.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

78.     The Individual Defendants acted as controlling persons of athenahealth within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of athenahealth and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

79.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was

reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

81.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

82.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to athenahealth shareholders

unless and until Defendants agree to include the material information identified above in the Definitive Proxy;

C.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.     Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 18, 2018                    **HUTCHINGS BARSAMIAN**
                                            **MANDELCORN, LLP**


                                            */s/Theodore M. Hess-Mahan*
                                            Theodore M. Hess-Mahan, BBO #557109
                                            110 Cedar Street, Suite 250
                                            Wellesley Hills, MA 02481
                                            Tel: (781) 431-2231
                                            thess-mahan@hutchingsbarsamian.com

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514